NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DATASPHERE, INC., | : |
| Plaintiff, | : Hon. Stanley R. Chesler, U.S.D.J. |
| | : Civil Action No. 05-2717 (SRC) |
| v. | : |
| COMPUTER HORIZONS CORP., | : OPINION |
| Defendant/Third-Party Plaintiff. | : |
| COMPUTER HORIZONS CORP., | : |
| Defendant/Third-Party Plaintiff, | : |
| v. | : |
| ROBERT DOYLE, individually, and R. DOYLE, INC., | : |
| Third-Party Defendants. | : |

**CHESLER, U.S.D.J.**

This matter comes before the Court on the motion for partial summary judgment on the Second and Sixth Counts of the Complaint, pursuant to FED. R. CIV. P. 56, by Defendant Computer Horizons Corp. ("CHC"). For the reasons set forth below, the motion will be granted in part and denied in part.

**BACKGROUND**

This case arises out of a set of contract disputes between two providers of computer services, CHC and Datasphere, Inc. ("Datasphere"). In 2002 and 2003, the two companies

entered into two agreements regarding working together to provide services to customers, one of which was AT&T.  One of these agreements, the Marketing Representative Agreement, has been declared void by this Court.  The other agreement, the AT&T Agreement (the "Agreement"), is the subject of this motion for partial summary judgment.  On February 4, 2003, Imran ("Ron") Merchant, on behalf of Datasphere, and Daya Kamath, on behalf of CHC, executed the Agreement.

On May 2, 2005, Plaintiff filed a ten-count Complaint in the Superior Court of New Jersey, Morris County: Law Division.  On May 26, 2005, Defendant removed the pending action to this Court.  In answering, CHC filed a counterclaim and a third-party complaint against third-party Defendants Robert Doyle and R. Doyle, Inc.

In 2007, the parties filed a motion and cross-motion for summary judgment.  On June 4, 2008, this Court entered its decision on these motions, resolving in their entirety all counts in the Complaint except for the Second and Sixth Count.  As to the Second Count, the motion for summary judgment was denied.  As to the Sixth Count, CHC's motion for summary judgment was granted in part (as to the Marketing Representative Agreement) and denied in part (as to the right of first refusal and restrictive covenant provisions in the AT&T Agreement).  It is these claims in the Complaint that survived the 2007 motion for summary judgment that are at issue in the instant motion.

## ANALYSIS

### I. Legal Standards

#### A. Rule 56 Motion for Summary Judgment

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party

demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."  In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that

creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").  "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."  Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

**II.     Defendant's motion for partial summary judgment**

   A.     The Second Count: breach of fiduciary duty

CHC moves for partial summary judgment on the Second Count of the Complaint, as amended by the Order of June 4, 2008, which stated: "the Second Count shall be and it is hereby considered amended to plead a breach of fiduciary claim against CHC arising solely out of the AT&T Agreement (as defined below)."  (Order of June 4, 2008 at ¶ 2.)  CHC moves for summary judgment on the ground that there is no evidence that CHC owed any fiduciary duty to Datasphere under the Agreement.  Plaintiff bears the burden of proof of breach of fiduciary duty

4

at trial, and CHC has satisfied its initial summary judgment burden by pointing to the absence of evidence to support Plaintiff's case. Celotex, 477 U.S. at 325. The burden then shifts to Datasphere to point to sufficient evidence for a jury to find in its favor at trial. Gleason, 243 F.3d at 138. In opposition, Datasphere contends that the Agreement established a joint venture between the parties, binding each party to the duties imposed by law upon a joint venturer.

The Agreement contains a governing law provision which states that it shall be "subject to and construed within the laws of the state of Ohio." (Cheng Decl. Ex. J at 2.) The Supreme Court of Ohio stated the essential characteristics of a joint venture in Ford v. McCue, 163 Ohio St. 498, 504 (1955):

> A joint business adventure, compositely defined, is an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge, without creating a partnership, and agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers, with an equal right of control of the means employed to carry out the common purpose of the adventure.

See also Silver Oil Co. v. Limbach, 44 Ohio St. 3d 120, 122 (1989) (following Ford). The issue of whether two parties entered into a joint venture is a question of fact for the jury. Bennett v. Sinclair Refining Co., 144 Ohio St. 139, 151 (1944).

In opposing the motion for summary judgment on the Second Count, Datasphere offers as evidence only the Agreement itself. No reasonable jury could conclude from this evidence that the parties entered into a joint venture, as defined by Ohio law. There is nothing in the Agreement that evidences these elements of a joint venture: 1) the parties are jointly entitled to receive the profits from the venture; 2) the parties combined their property and money in

furtherance of the venture; 3) the parties did not create a partnership; and 4) the parties held an equal right of control of the means employed to carry out the common purpose. As to the issue of the right of control, Datasphere, in its opposition brief, concedes that "overall control of the project was left to CHC." (Pl.'s Opp. Br. 8.) Plaintiff offers only the joint venture theory to support its claim for breach of fiduciary duty.

Datasphere has failed to carry its summary judgment burden, as the nonmovant with the burden of proof at trial, of pointing to sufficient evidence for a jury to find in its favor at trial. No issue as to any material fact precludes the entry of judgment as a matter of law. Defendant's motion for summary judgment on the Second Count will be granted.

      B.      <u>The Sixth Count: breach of contract</u>

CHC moves for partial summary judgment on the Sixth Count of the Complaint, for breach of contract. While the Complaint pleads breaches of two contracts, this Court has ruled that the Marketing Representative Agreement is void; only the AT&T Agreement remains at issue. CHC moves for summary judgment on the Sixth Count on two grounds: 1) as to the restrictive hiring covenant that precluded CHC from hiring Datasphere's employees, the evidence supports the defense of waiver; and 2) as to all other contractual obligations, there is no evidence of breach of contract.

           1.      *The restrictive hiring covenant*

As to the restrictive hiring covenant, the parties do not dispute that the Agreement contains such a covenant, that CHC hired two of Datasphere's employees (Wayne Johnson and Thatagata Ghosh), and that the Agreement allows the parties to waive the restriction by mutual consent. The parties dispute only whether Datasphere consented to the hiring. Waiver is well-

recognized as an affirmative defense.  See FED. R. CIV. P. 8(c).  The party asserting an affirmative defense bears the burden of proving it at trial, and so CHC bears the burden of proof.

As evidence of Datasphere's consent, CHC points to this deposition testimony of CHC officer Daya Kamath regarding the hiring of the Datasphere employees:

| | |
|---|---|
| Kamath: | We requested DataSphere that we can hire them. |
| Attorney: | Who gave you that permission? |
| Kamath: | Ron Merchant.  I had a conversation with Ron Merchant. |

(Cheng Decl. Ex. S at 86:25-87:4).  There is no dispute that Merchant was, at one time, Datasphere's President.  A reasonable jury could hear this evidence and conclude that Datasphere gave its consent.

In opposition, Datasphere points to this deposition testimony of Imran Merchant:

| | |
|---|---|
| Attorney: | You say that Mr. Ghosh, in or around April 1st, became an employee of CHC? |
| Merchant: | I didn't say that. |
| Attorney: | I'm sorry. |
| Merchant: | He said it. |
| Attorney: | Okay.  Do you know whether that was true or not? |
| Merchant: | It came as an e-mail to all of us. |
| Attorney: | Okay.  What about Mr. Johnson; do you know whether he ever became an employee of CHC? |
| Merchant: | I don't know. |

(Bray Decl. Ex. B 164:2-12.)  At summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255. Believing this evidence, Merchant did not know whether Johnson ever became employed by CHC, and Merchant learned of Ghosh's employment by CHC through an email.  It is justifiable to infer from this evidence that Merchant did not have the conversation with Kamath in which Kamath asked permission for CHC to hire the two employees, and thus that Merchant did not

give consent to the employment. This evidence suffices to raise a genuine issue as to the material factual question of whether Datasphere gave consent to the hiring of Ghosh and Johnson.

In addition, Datasphere contends that Merchant did not even have the authority to give such consent on behalf of Datasphere, as the Datasphere Board of Directors had removed him from office one month prior to the alleged conversation. CHC replies that Merchant's consent was effective under the principle of apparent authority. Ohio law recognizes the principle of apparent authority, <u>Ohio State Bar Ass'n v. Martin</u>, 2008 Ohio 1809, P41 (2008), but does not clearly state a standard for termination of apparent authority. The Restatement (Third) of Agency sets forth these guidelines for termination of apparent authority:

> (1) The termination of actual authority does not by itself end any apparent authority held by an agent.
>
> (2) Apparent authority ends when it is no longer reasonable for the third party with whom an agent deals to believe that the agent continues to act with actual authority.

RESTATEMENT (THIRD) OF AGENCY § 3.11 (2006). The parties have not fully briefed the question of whether, if Merchant truly did give consent to the hiring, it was reasonable for CHC to believe that Merchant was acting with actual authority. At this point, this appears to be another material factual question, which supports the conclusion that the issue of waiver of the restrictive covenant cannot be resolved on this motion for summary judgment. As to the issue of breach of the restrictive hiring covenant, Defendant's motion for partial summary judgment will be denied.

      2.     *Other contractual obligations*

Defendant contends that the Complaint pleads breach of two other contractual obligations

in the Agreement: 1) the obligation to give Datasphere a right of first refusal to provide employees for the AT&T site; and 2) the obligation to not turn over certain software source code to AT&T.  Defendant argues that Datasphere has no evidence to support these claims.

As to the obligation to give Datasphere a right of first refusal, the parties do not dispute that the Agreement required CHC to provide Datasphere with "the first right of refusal [] for all supplemental staffing requirements at AT&T for Data Management Services," and that CHC did place non-Datasphere workers into some positions that fall within the scope of this provision. (Cheng Decl. Ex. J at 1.)  The parties dispute only whether CHC complied with the obligation to extend the right of first refusal to Datasphere for these positions.

CHC contends that it made the required offer to Datasphere, and that Datasphere refused the offer because the rates were too low.  In support, CHC offers the Kamath declaration, but that evidence does not fully support its assertion.  Kamath states that he spoke with Merchant to inform him of the low rates AT&T wanted to pay consultants "to ascertain whether Datasphere would supply consultants at an even lower rate so that CHC could do this profitably."  (Cheng Decl. Ex. V ¶ 9.)  Kamath states that Merchant told him that the rates were too low.  (Cheng Decl. Ex. V ¶ 10.)  This does not appear to support the contention that CHC made an offer of positions to Datasphere.

In response, Datasphere asserts that CHC never offered the supplemental staffing positions to Datasphere for refusal and points to evidence to support its case.  Datasphere's opposition brief points to deposition testimony from Imran Merchant that has no connection to the issue at hand (Bray Decl. Ex. B **104**:13-20), but this appears likely to be due to a typing error. The deposition testimony at **164**:13-20 is relevant:

9

> Attorney:   Now, it says also: CHC will provide Datasphere the first right of refusal for all supplemental staffing requirements at AT&T for Data Management Services.  Do you know whether CHC provided any opportunities for Datasphere for supplemental staffing requirements?
>
> Merchant:   Not that I know of.

(Bray Decl. Ex. B 164:13-20.)  Furthermore, three questions later, Merchant stated: "We had no representative, from a sales standpoint, on Datasphere at AT&T.  So, we don't have any information on whether there were sales opportunities, new opportunities for supplemental staffing.  We never heard of them."  (Bray Decl. Ex. B 165:14-18.)  A reasonable jury could hear this evidence and decide in Datasphere's favor, finding that CHC never offered Datasphere opportunities for supplemental staffing and thus breached its obligation to extend to Datasphere the right of first refusal.

In reply, CHC offers a new argument: it may not have strictly complied with the contract by offering the *positions*, but it substantially complied by offering the *rates* to Datasphere.  While there may be some merit in the argument that, once Datasphere rejected AT&T's compensation rates as too low, there was no point in offering the actual job opportunities, this is a new argument in a reply brief and this Court will not accept it.  As a matter of procedure, this Court will not accept arguments offered for the first time in the reply brief, as they were not properly asserted in the opening brief and Defendants have not had the opportunity to respond to them. Anspach v. City of Philadelphia, 503 F.3d 256, 258 n.1 (3d Cir. 2007) ("failure to raise an argument in one's opening brief waives it").  CHC moved for summary judgment on the ground that it had strictly complied, and Datasphere defeated that motion by pointing to evidence from which a reasonable jury could conclude that CHC had not strictly complied.  CHC cannot prevail

on a motion for summary judgment by presenting a new theory in reply.

At trial, Datasphere bears the burden of proof of breach of contract. To defeat the motion for summary judgment, it must offer evidence of breach, and it has done so. As to Datasphere's claim for breach of the obligation to give it a right of first refusal, the motion for summary judgment will be denied.

As to the matter of the source code, Datasphere's argument in its opposition brief might be politely characterized as defying comprehension. This is Datasphere's explanation in its entirety:

> The point is simple. Datasphere performed its obligation under the AT&T contract, and made the source code available to AT&T. This was done with the expectation that CHC would perform its promises, would be honorable and would not betray its trust by converting all of the financial benefits to itself. It is this conduct (misconduct) that constitutes the breach involving the source code.

(Pl.'s Opp. Br. 9.) The Court is unable to fully divine the meaning of this mysterious argument, but can understand it well enough to conclude that Datasphere has failed to carry its burden under Rule 56 of raising a genuine issue as to a material fact. As to obligations concerning the source code, the motion for summary judgment will be granted.

In conclusion, the motion for summary judgment on the Sixth Count will be granted in part and denied in part. As to the claims for breach of the Agreement's restrictive hiring covenant and for breach of the obligation to provide a right of first refusal, genuine factual issues preclude entry of summary judgment, and the motion will be denied. As to all other claims for breach of the Agreement, the motion for summary judgment will be granted.

## CONCLUSION

For the reasons stated above, Defendant's motion for partial summary judgment on the Second and Sixth Count of the Complaint is granted in part and denied in part. As to the entire Second Count and part of the Sixth Count, Defendant has demonstrated that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). As to the Second Count, the motion for summary judgment is **GRANTED**. As to the Sixth Count claims for breach of the Agreement's restrictive hiring covenant and for breach of the obligation to give Datasphere the right of first refusal, the motion for summary judgment is **DENIED**. As to the remaining claim in the Sixth Count for breach of the Agreement, the motion for summary judgment is **GRANTED**.

        s/ Stanley R. Chesler
    Stanley R. Chesler, U.S.D.J.

Dated: October 9, 2007